No. 41,714

Antoinette W. Smith, *Appellant,* v. Samuel D. Smith, *Appellee.*

(352 P. 2d 1056)

Opinion filed June 11, 1960.

*E. Edward Johnson,* of Topeka, argued the cause, and *L. M. Ascough, John A. Bausch* and *John D. O'Brien,* all of Topeka, were with him on the brief for the appellant.

*Charles S. Fisher, Jr.,* of Topeka, argued the cause, and *T. M. Lillard, O. B. Eidson, Philip H. Lewis, James W. Porter* and *E. Gene McKinney,* all of Topeka, were with him on the brief for the appellee.

The opinion of the court was delivered by

Schroeder, J.: This is an appeal from an order of the trial court denying the appellant's motion in a divorce action to foreclose a

lien upon real property which was established by the divorce decree to secure the payment of alimony. The decree granting a divorce on October 24, 1957, awarded alimony in the total sum of $13,068, payable in installments of $108 per month. The provision in the divorce decree relied upon is an acceleration clause which provides that on default in the payment of any monthly installment "the entire balance shall become due and draw interest at the rate of 6% per annum and plaintiff shall be entitled to foreclose" the lien on the real estate securing the alimony payments.

The appellee, defendant-husband in the divorce action, made the alimony payments regularly until the month of September, 1958, when by reason of illness and hospitalization he earned practically no money for several months. As a result of this illness he paid only $50 on the September, 1958, installment of alimony, paid in full the October installment, and failed to pay when due in 1958 the November and December installments.

On December 13, 1958, the appellant was paid $382 as alimony. The parties stipulated this money was received and applied as follows: "$58.00 for September of 1958, $108.00 November 1958 alimony payment, $108.00 December alimony payment and $108.00 for January."

It is to be noted the $382 paid on the 13th day of December included $108 as an advance payment for the January, 1959, installment.

On December 5, 1958, the appellant, prior to the $382 payment of alimony, filed her motion in the district court to have the entire unpaid balance of alimony declared due under the acceleration clause and to foreclose the lien on the appellee's real estate. The trial court on June 19, 1959, after hearing the motion and the testimony presented by the parties, overruled the motion stating:

"Plaintiff hasn't lost any money. She still has the protection of the lien. The defendant has made all the payments. The fact he didn't make them right on the date is explained by the evidence, which is unrefuted, of the physical incapacity and inability to pay on account of physical incapacity. I really can't see that anybody has been hurt. I think the lien established by the decree in favor of plaintiff is still good. She still has the protection and she has had all of her money. The motion to foreclose the lien is overruled."

The record indicates the appellee remarried subsequent to the divorce. He and his present wife, Betty, reside in the City of Lawrence, Kansas. The appellant resides in the City of Topeka. The appellant testified concerning the alimony payments that when

the appellee and Betty picked up the children in Topeka the 1st of September Betty said they would not be able to pay all of the alimony. The appellant then testified:

"Q. Did you agree? Did you say it would be all right?

"A. I said half would be all right that month with the understanding they would catch it up.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"Q. You agreed that the half of the September payment would be all right? That it could be delayed?

"A. That's right.

"Q. That's the same $58.00 you received later?

"A. Yes, sir."

The appellee testified that as a result of an accident which occurred approximately August 14, 1958, he was hospitalized for a period of two weeks following which he had to stay in bed for another two weeks. He worked again from the latter part of September until the 22nd day of October but did not work from then until the 1st of January.

Betty testified that she had a conversation in October, 1958, with the appellant on the front walk of her home in Lawrence. She testified:

"Q. Tell the Court what was said.

"A. I said, 'We are not going to be able to make the November payment. We have made the October payment. We will make the child support because I know this cannot be denied but we are not in position to make the alimony.' She said, 'Fine, don't worry about it.' I said, 'Well, are you sure you can manage? Is this satisfactory?' She said, 'It's perfectly all right. Don't worry.' She walked towards the car and I walked back to the house.

"Q. When you say 'she', who are you talking about?

"A. Ann Smith.

"Q. Is that the same payment you are talking about that was made on December 12th, 1958?

"A. That's right.

"Q. That was approximately six weeks later, was it?

"A. Yes."

We are not concerned with the conflicting testimony of the appellant regarding the above statements.

The trial court made no specific findings, and the judgment of the trial court overruling the appellant's motion imports a general finding in favor of the appellee. A general finding made by the trial court determines every controverted question of fact in support of which evidence has been introduced and raises the presumption that all facts necessary to sustain and support the judgment have

been found. (*Dryden v. Rogers*, 181 Kan. 154, 309 P. 2d 409; *Watkins v. Layton*, 182 Kan. 702, 324 P. 2d 130; *Boese v. Crane*, 182 Kan. 777, 324 P. 2d 188; *In re Estate of Julian*, 184 Kan. 94, 334 P. 2d 432; and *Nauman v. Kenosha Auto Transport Co.*, 186 Kan. 305, 349 P. 2d 931.) Under these circumstances and based upon the testimony in the record as heretofore related, it may be inferred that the trial court found the appellant gave her prior consent and agreed to a delay in the payment of alimony installments.

The only question presented is whether upon the foregoing circumstances the appellant is entitled to foreclose the lien.

The appellant takes the position that "(1) the trial judge in denying plaintiff the right to foreclose her lien was, in effect, modifying his previous judgment and he was not authorized to do this since the term in which the original judgment was entered had expired; and, (2) that upon default of the monthly installments, the entire balance of the alimony judgment became due and was a final judgment."

The legal propositions upon which the appellant relies are (1) that a judgment cannot be set aside, modified or changed after the term at which it is rendered, except as provided in the civil code (*Heston v. Finley*, 118 Kan. 717, 236 Pac. 841; *Drury v. Drury*, 141 Kan. 511, 41 P. 2d 1032; and *Keys v. Smallwood*, 152 Kan. 115, 102 P. 2d 1001); (2) that a judgment of divorce settles all the property rights and obligations of the parties to each other after the divorce is granted notwithstanding the circumstances of the parties may have changed (*Noonan v. Noonan*, 127 Kan. 287, 273 Pac. 409; *Mayfield v. Gray*, 138 Kan. 156, 23 P. 2d 498; *Calkins v. Calkins*, 155 Kan. 43, 122 P. 2d 750; and *Breidenthal v. Breidenthal*, 182 Kan. 23, 29, 318 P. 2d 981); (3) that after the term has expired the judgment is not only binding upon the parties but upon the trial court as well (*Riley v. Riederer*, 144 Kan. 422, 61 P. 2d 106; *Hoffman v. Hoffman*, 156 Kan. 647, 135 P. 2d 887; and *Hinshaw v. Hinshaw*, 166 Kan. 481, 203 P. 2d 201); and (4) that installments for the payment of alimony, when due and unpaid, become final judgments and may be collected in the same manner as other judgments (*Haynes v. Haynes*, 168 Kan. 219, 212 P. 2d 312; *Bassett v. Waters*, 103 Kan. 853, 176 Pac. 663; *Stoner v. Stoner*, 134 Kan. 356, 5 P. 2d 847; and *Bourman v. Bourman*, 155 Kan. 602, 127 P. 2d 464).

Unless the appellant prevails on the basic premise that a default in the payment of any alimony installment due accelerates the ma-

turity of all payments on the balance remaining unpaid, *and that such acceleration is beyond the control of the parties,* the propositions of law upon which she relies have no application.

In *Stoner v. Stoner,* supra, a division of property was made and a portion made payable in installments which were made a lien upon real property. The court held: "It was competent for the court in the divorce decree to fix the times of payment of Mrs. Stoner's share, *and the decree being valid and final in character is controlling not only as to the amount of the payments, but also as to the time when payments may be enforced."* (p. 360.) (Emphasis added.) There few payments had been made and a number were in default, and the court said:

". . . As to those in default there may be present foreclosure and enforcement, but of course there can be no enforcement of those not yet payable. The lien extends to all these installments which defendant ·was adjudged to pay as they become due. The judgment being final, the claim of Mrs. Stoner for the unpaid payments is her property, and subject to assignment and other disposition as such. It, of course, may be enforced from time to time as defaults occur. The provision of the decree ordering payments in installments did not take from it the character of finality nor destroy the lien imposed by the court to secure payments of all the installments . . ." (p. 360.)

Relying upon the foregoing italicized statement the appellant argues that in the *Stoner* case there was *no accelerating clause* and the Supreme Court reversed the lower court's ruling wherein the installment payments not yet due were foreclosed, but she argues in the present case the decree specifically provides for the acceleration of the entire balance due upon default of any monthly installments. In other words, she contends that the accelerating clause is absolute in its terms and does not contain any optional features, and such provision is self-executing and causes the whole debt to become due automatically and without further action. By reason thereof it is argued, where default was made, the entire balance due on the alimony judgment became final in the same manner that past due installments become final judgments.

We hasten to observe the facts in the *Stoner* case did not present the issue which presently confronts the court. We have been cited to no Kansas case, nor has our research disclosed any, which dealt with a divorce decree making alimony payable in installments and providing for the acceleration of the entire balance due upon default of any installment wherein the facts and circumstances were similar to the case at bar.

The appellee relies on note and mortgage cases to support his position. The appellee contends "this court and the courts of other states have definitely established the rule that where a delay or default has been made in paying interest at the time it falls due on a promissory note, an acceleration clause making all future sums due and payable at the time of such default cannot be enforced if the creditor later receives the delayed payment and applies it definitely to past due interest."

The case of *Andregg v. Sparrow*, 152 Kan. 744, 107 P. 2d 739, is cited as authority for the above proposition. There a mortgage note had become due according to the terms of the instrument upon default in payment of interest. Thereafter the interest was paid to date and was prepaid for more than a year in the future with an agreement between the parties that the note should not be due until the date to which the interest had been prepaid. It was held the maturity of the note was to be extended and the statute of limitations did not begin to run until the date when the note, as extended, again became due. The only question of fact in the case was as to the manner in which it was agreed that a payment of $165 was to be credited. The plaintiff's evidence showed, and the trial court found, that the parties agreed the payment was to be used to pay the back interest on the note up to the date of the payment, and to further prepay the interest for more than one year up to March 1, 1935, and that the note should not be due until the latter date, thereby extending the note. The defendant there contended the agreement was that the back interest should be paid and the balance of the payment should be applied upon the principal.

It is readily apparent the *Andregg* case does not support the appellee. In fact, the Kansas law is to the contrary. In *Miles v. Hamilton* [1920], 106 Kan. 804, 189 Pac. 926, 19 A. L. R. 276 (rehearing denied [1920], 107 Kan. 187, 190 Pac. 430, 19 A. L. R. 279) a real estate mortgage was given to secure a note which provided that if any interest should not be paid when due the whole of the debt, principal and interest, should immediately become due and payable. After interest was in default for the first year of the note $1,000 was paid, being applied to the first year's interest and as a prepayment of part of the principal. The court held (by the language of the acceleration clause referred to) the default in the interest payment of its own force, without any declaration, notice or exercise of an option on the part of the creditor, matured the

entire debt, and started the running of the statute of limitations. It was said in the opinion:

". . . No waiver of any kind could result merely from the acceptance of a part of an overdue indebtedness. And even if the allegations could by great liberality of interpretation be regarded as amounting to a statement that an extension of the time of payment to the date of the original maturity had been expressly agreed to, an agreement to that effect would not be binding on the creditor because not supported by any legal consideration (8 C. J. 435-436), and if it did not bind him it could not impair the debtor's privilege of relying upon the statute of limitations. When the indebtedness matured by the default in the interest payment, it became due for all purposes. The debtor owed the creditors the duty of paying the entire amount at once, and· the partial performance of this obligation by the immediate payment of a part of the debt could not make enforceable a promise of forbearance, and as such a promise could not prevent the bringing of an action, it could not interfere with the running of the statute." (pp. 806, 807.)

For other Kansas authorities on this point see *National Bank v. Peck* [1871], 8 Kan. 660; *Lewis v. Lewis* [1897], 58 Kan. 563, 50 Pac. 454; *Snyder v. Miller* [1905], 71 Kan. 410, 80 Pac. 970, 114 Am. St. Rep. 489, 69 L. R. A. 250; and *Spesard v. Spesard* [1907], 75 Kan. 87, 88 Pac. 576.

Where the acceleration clause is absolute in its terms—that is, that the note or mortgage according to its terms becomes due on default and does not contain any optional features—the courts in the United States are not agreed as to whether or not such provision is self-executing and causes the whole debt to become due automatically and without further action. According to one line of authorities, comprised of cases from a majority of the jurisdictions, an absolute acceleration clause in a note or mortgage that it shall become due upon some default is not self-operative but leaves an option to the creditor whether or not to take advantage of the clause, while another line of cases holds that under such clause the entire principal of the note or the whole mortgage becomes automatically due without the necessity of a declaration of the right or an election on the part of anyone. (159 A. L. R., Annotation, pp. 1077, 1079.) The Kansas decisions on notes and mortgages definitely fall in the latter group.

It may be conceded that failure to pay the alimony installments directed by the divorce decree in the case at bar promptly as they fell due would, under the acceleration clause, make all future payments of alimony become due on the date of default. But the evidence is not limited solely to the matter of default. Had the

evidence been limited to an admission of default on the part of the appellee and the stipulation of the parties relative to the application of the $382 payment of alimony, the court would be called upon to decide whether the rule of *Miles v. Hamilton*, supra, concerning a real estate mortgage given to secure a note with an acceleration clause upon default in payment of interest, should be applied to a divorce decree making alimony payable in installments with an acceleration clause upon default in the payment of any installment, the rights of the parties in the one case being controlled by a contract between them, and in the other case by a court judgment. We need not, however, decide this question and, therefore, leave it open for future consideration.

Here, there being no objection to the testimony on technical grounds at the hearing on the motion, the evidence supports a finding that the appellant gave her prior consent and agreed to a delay in payment of the alimony installments in question by reason of the appellee's hospitalization and physical incapacity to work, alimony installments which she later attempts to declare in default under the divorce decree. Even in the Kansas note and mortgage cases an acceleration clause can be waived or changed by the consent of the parties. (*Spesard v. Spesard*, supra.) Not only was there prior consent and agreement by the appellant but the $382 payment was accepted specifically in payment of past due monthly installments and also as an advance payment of the $108 installment which was not yet due but would become due in January, 1959. Having thus given her prior consent and agreement to a delay in payment of the alimony installments in question, which she confirmed by a later application of the $382 payment of alimony, the appellant has *waived* any right to insist upon full maturity under the acceleration clause. This waiver does not in any way jeopardize or affect the validity of the lien, nor does it modify the judgment. The appellant has merely waived the acceleration clause, which she had a perfect right to do, with respect to the delayed payment of alimony installments.

The judgment of the trial court is affirmed.